UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FRANCISCO ROMAN MORALES TORRES,

        Petitioner,

  v.                                          Case No. 19-C-929

SHERIFF DALE J. SCHMIDT,
LOUIS ZAMORA,
MATTHEW T. ALBENCE, and
KEVIN MCALEENAN,

        Respondents.

# DECISION AND ORDER

      Petitioner Francisco Roman Morales Torres, who is currently being detained at Dodge County Detention Facility in Juneau, Wisconsin, filed a petition for federal relief pursuant to 28 U.S.C. § 2241, challenging his continued detention by Immigration and Customs Enforcement (ICE) officials during the course of his removal proceedings under 8 U.S.C. § 1226(c). He asserts that he has been detained by ICE for more than 10 months and has not been afforded a bond hearing despite an immigration judge's decision granting him asylum more than three months ago. Petitioner contends that Respondents cannot justify his detention under the United States Constitution and requests that the court grant his petition and order his release or, alternatively, order that Respondents release him within 30 days unless Respondents schedule a bond hearing before an immigration judge. For the reasons that follow, the petition will be denied.

**BACKGROUND**

Petitioner is 25 years old and a Mexican national. He has lived in the United States since he was about 13 years old. On September 18, 2012, Petitioner filed an application for Consideration of Deferred Action for Childhood Arrivals (DACA). The application was approved on November 26, 2012, and was valid until November 25, 2014. Petitioner filed a second DACA application on September 28, 2015, which was approved on November 13, 2015, and valid until November 12, 2017. Petitioner did not renew his DACA status or file a subsequent application after his status expired in 2017.

On April 6, 2018, Petitioner was convicted of battery in the Circuit Court of Cook County, Illinois and was sentenced to 90 days in the Illinois Department of Corrections. On June 13, 2018, Petitioner was convicted of possession of a stolen vehicle in the Circuit Court of Cook County, Illinois and sentenced to 24 months' probation. Enforcement and Removal Office (ERO), Chicago, took Petitioner into ICE custody on September 4, 2018, and Petitioner was personally served with a Notice to Appear (NTA), charging him as removable for being present in the United States without being admitted or paroled by an Immigration Officer, pursuant to 8 U.S.C. § 1182(a)(6)(A)(i), and for having been convicted of a crime involving moral turpitude, pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(I).

Petitioner was held without bond and subject to mandatory detention due to his previous criminal convictions pursuant to 8 U.S.C. § 1226(c)(1)(A). He appeared at his initial master calendar hearing with counsel on October 9, 2018. The case was continued for 24 days at Petitioner's request for attorney preparation. At a later master calendar hearing on November 2, 2018, Petitioner admitted the allegations, conceded both charges on the NTA, and filed an

Application for Asylum and for Withholding of Removal. A final hearing was set for January 3, 2019.

On November 30, 2018, Petitioner filed an emergency motion to continue the individual hearing to allow his attorney to obtain a psychological evaluation. At a December 21, 2018 master calender hearing, the immigration judge continued the hearing to January 15, 2019, for status on the psychological evaluation. The immigration judge held a final merits hearing on Petitioner's application for relief on March 12, 2019. The immigration judge issued a written decision granting the application for asylum on April 22, 2019, based on Petitioner's fear of persecution in Mexico stemming from his sexual orientation and his mental health.

The Department filed a Notice of Appeal of the immigration judge's decision with the Board of Immigration Appeals on May 7, 2019. The Board issued a briefing schedule on June 5, 2019, and both parties submitted briefs to the Board on June 26, 2019. The Board has not issued a decision on the Department's appeal.

## ANALYSIS

Petitioner contends that his prolonged detention violates his right to due process. A federal court may grant habeas relief to a detainee who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2441(c)(3). Under the Due Process Clause of the Fifth Amendment, the government may not deprive any person of liberty without due process of law, and it is "well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Denmore v. Kim*, 538 U.S. 510, 517 (2003).

United States immigration law "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*

*v. Rodriguez*, 138 S. Ct. 830, 848 (2018). Section 1226 governs the arrest and detention of aliens pending their removal and provides that the Attorney General may issue a warrant for the arrest and detention of an alien "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). While the Attorney General "may release" an alien detained under § 1226 "on bond . . . or conditional parole," § 1226(a)(2), detention under § 1226(c) is mandatory during removal proceedings for certain criminal aliens, including Petitioner. 8 U.S.C. § 1226(c)(1); *see also Jennings*, 138 S. Ct. at 847 (noting that § 1226(c) "mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes").

The Supreme Court considered the constitutionality of prolonged detention under § 1226(c) in *Denmore v. Kim*, 538 U.S. 510 (2003). There, the Court rejected a facial due process claim brought by an alien who had been detained approximately six months but conceded he was deportable. *Id.* at 531. In support of his constitutional challenge, the petitioner relied on *Zadvydas v. Davis*, 533 U.S. 678 (2001), which held that the Due Process Clause limits detention of aliens under 8 U.S.C. § 1231, the post-removal-period provision of the Immigration and Nationality Act, to a presumptive six months. In rejecting the petitioner's challenge, the *Denmore* Court distinguished *Zadvydas* in part because *Zadvydas* involved § 1231, which addresses detention of aliens during the 90-day removal period following a final order of removal, rather than the pre-removal detention under § 1226(c). The Court explained that, "[w]hile the period of detention at issue in *Zadvydas* was 'indefinite' and 'potentially permanent,' the detention here is of a much shorter duration" and has a "definite termination point," that is, the completion of the removal proceedings. *Denmore*, 538 U.S. at 528–29 (quoting *Zadvydas*, 533 U.S. at 690–91). At the time

4

*Denmore* was decided, detention lasted roughly a month and a half in the vast majority of cases "and about five months in the minority of cases in which the alien chooses to appeal." *Id.* at 530.

The Court noted that mandatory detention of criminal aliens pending removal "serves the purpose of preventing deportable criminal aliens from feeling prior to or during their removal proceedings." *Id.* at 528. It observed that "even with individualized screening, releasing deportable criminal aliens on bond would lead to an unacceptable rate of flight." *Id.* at 520. The Supreme Court concluded that "[d]etention during removal proceedings is a constitutionally permissible part of that process" and held that § 1226(c) is constitutionally valid on its face. *Id.* at 531.

Section 1226(c) does not limit the length of the detention it authorizes, and the Supreme Court recently rejected the practice of reading an implicit time limit into the statute. *See Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). In *Jennings*, the Court held that the plain language of § 1226(c) is unambiguous and makes clear that "detention of aliens within its scope *must* continue 'pending a decision on whether the alien is to be removed from the United States.'" *Id.* at 846 (quoting § 1226(a)). Although the court did not address whether the Due Process Clause places constitutional limitations on prolonged detentions under § 1226(c), the Court rejected the argument that the statutory interpretation principle of constitutional avoidance required reading into the statute the right to a bail hearing for individuals whose detention was prolonged by more than six months so as to avoid due process concerns. The court reasoned that, "by allowing aliens to be released 'only if' the Attorney General decides that certain conditions are met, § 1226(c) reinforces the conclusion that aliens detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute." *Id.*

5

In this case, Petitioner argues that § 1226(c)'s mandatory detention is unconstitutional as applied to him specifically because his detention has become prolonged and is indefinite. The Seventh Circuit has not yet addressed the issue of prolonged detention under § 1226(c) post-*Jennings*, but other courts have concluded that, in deciding whether the detention is reasonable, the court must examine the facts of the particular case. Courts have considered a non-exhaustive list of factors in determining whether continued detention without a bond hearing is unconstitutional: "(1) the total length of detention to date, including whether the immigration detention exceeds the time the alien spent in prison for the crime that allegedly renders him removable; (2) the likely duration of future detention; (3) the considerations of detention, including whether the facility for civil immigration detention is meaningfully different from a penal institution for criminal detention; (4) whether delays in the removal proceedings were caused by the detainee or the government; and (5) the likelihood that the removal proceedings will result in a final order of removal, including whether the alien has asserted colorable defenses to removal." *Vargas v. Beth*, 378 F. Supp. 3d 716, 727 (E.D. Wis. 2019) (citations omitted). Consideration of these factors "must be tied back to the ultimate question for the court: has prolonged detention become unreasonable, unjustified, or arbitrary in light of the purpose of section 1226(c)?" *See Misquitta v. Warden Pine Prairie ICE Processing Ctr.*, 353 F. Supp. 3d 518, 526 (W.D. La. 2018); *see also Denmore*, 538 U.S. at 532–33 (Kennedy, J., concurring) ("[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to the risk of flight and dangerousness if the continued detention became unreasonable or unjustified." (citation omitted)). After all, the purpose of mandatory detention under § 1226(c) is to prevent "deportable criminal aliens from fleeing prior to or during their

removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Denmore*, 538 U.S. at 528.

Considering the record as a whole, the court concludes that Petitioner has not shown that his continued detention without a bond hearing is so unreasonable or arbitrary as to violate due process. Petitioner has been detained for approximately 10 months, but the fact that his detention is approaching the year mark does not, by itself, make his detention suspect. Petitioner is availing himself of the procedural remedies available to him and does not dispute that he requested continuances in his administrative proceedings or that there have not been any unusual delays in those proceedings. Although Petitioner contends that his requests were necessary to prepare his case and that he should not be faulted for exercising his rights, delays resulting from Petitioner's actions do not demonstrate that his continued detention is unreasonable or unjustified. *See Coello-Udiel v. Doll*, No. 3:17-CV-1414, 2018 WL 2198720, at *4 (M.D. Penn. May 14, 2018) ("While [petitioner] certainly has the right to pursue all available avenues to combat his removal, post-*Jennings*, he does not have the right to parlay the resulting delay into a bond hearing."). There is no evidence in the record that the government has acted in bad faith, has improperly or unreasonably delayed the regular course of Petitioner's proceedings, or has detained Petitioner for any purpose other than the determination of his removal proceedings. In addition, Petitioner's detention under § 1226(c) is not indefinite. A briefing schedule has been entered in his proceedings, and both parties submitted briefs to the Board on June 26, 2019. In short, Petitioner's detention has not become unreasonable, unjustified, or arbitrary in violation of the Due Process Clause. There is no evidence or indication that Petitioner is being detained for some other purpose than to prevent him from "fleeing prior to or during [his] removal proceedings, thus increasing the chance that, if

ordered removed, [he] will be successfully removed." *Denmore*, 538 U.S. at 528. Accordingly, his petition will be denied without prejudice.

## CONCLUSION

For these reasons, Petitioner's § 2241 Petition (Dkt. No. 1) is **DENIED without prejudice**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this   6th   day of August, 2019.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court